# EXHIBIT A

FILED
2026 JUN 09 11:38 AM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 26-2-18627-8 KNT

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF KING

| | |
|---|---|
| ALEXANDER BONETTO, JOSHUA GABRIELSON, AMBER MYKING, and SAMUEL WINEINGER, on their own behalf and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>HARBOR FREIGHT TOOLS CORPORATE, LLC, and HARBOR FREIGHT TOOLS USA, INC.,<br><br>Defendants. | Case No.: _____ KNT<br><br>CLASS ACTION COMPLAINT<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiffs Alexander Bonetto, Joshua Gabrielson, Amber Myking, and Samuel Wineinger, on their own behalf and on behalf of others similarly situated, on information and belief except to their own experiences and matters of public record, complain of Defendants Harbor Freight Tools Corporate, LLC, and Harbor Freight Tools USA, Inc. (collectively, "Harbor Freight"), as follows:

## I.    INTRODUCTION

1.    In 1998, to protect Washington consumers from the annoyance and harassment caused by the burgeoning spam email industry, the Washington State Legislature enacted the Commercial Electronic Mail Act (CEMA), codified at chapter 190 of title 19 of the Revised Code

CLASS ACTION COMPLAINT – 1

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

of Washington (RCW).

2.      Among other things, CEMA prohibits transmitting a commercial email with "false or misleading information in the subject line" to the email address of a Washington resident. RCW 19.190.020(1)(b).

3.      Harbor Freight engages in the precise activity which CEMA prohibits.

4.      Harbor Freight spams Washington consumers, including Plaintiffs, with commercial emails featuring subject lines which employ various tactics to create a false sense of urgency in consumers' minds—and ultimately, from consumers' wallets.

5.      This false urgency wastes consumers' time by enticing them to engage with the defendant's marketing efforts for fear of missing out. It also floods consumers' email inboxes with repeated false notifications that the time to act—*i.e.*, *purchase*—is short.

6.      Through this deceptive time-sensitivity, Harbor Freight falsely narrows the field—steering consumers away from shopping for better deals—to its own products that must be purchased *now*.

7.      Plaintiffs challenge Defendants' harassment of Washington consumers with deceptive marketing for violations of the Commercial Electronic Mail Act (RCW 19.190.020) and the Consumer Protection Act (RCW 19.86.020) for injuries caused, additionally seeking injunctive relief against such violations in the future.

## II.      JURISDICTION AND VENUE

8.      The Court has jurisdiction of this case under RCW 2.08.010.

9.      Venue is proper in King County under RCW 4.12.020(3) because Plaintiffs' cause of action, or some part thereof, arose in King County.

CLASS ACTION COMPLAINT – 2

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

### III.    PARTIES

10.    Plaintiff Alexander Bonetto is a resident of King County, Washington.

11.    Plaintiff Joshua Gabrielson is a resident of Pierce County, Washington.

12.    Plaintiff Amber Myking is a resident of is a resident of King County, Washington.

13.    Plaintiff Samuel Wineinger is a resident of King County, Washington.

14.    Defendant Harbor Freight Tools Corporate, LLC is a limited liability company with a principal office at 26677 Agoura Road, Calabasas, CA 91302-1959, and a registered agent in the State of Washington at Corporation Service Company, 300 Deschutes Way, Ste 208 MC-CSC1, Tumwater, WA 98501.

15.    Defendant Harbor Freight Tools USA, Inc. is a corporation with a principal office at 26677 Agoura Road, Calabasas, CA 91302-1959, and a registered agent in the State of Washington at Corporation Service Company, 300 Deschutes Way, Ste 208 MC-CSC1, Tumwater, WA 98501.

16.    Harbor Freight sells its products in Washington through its website and is thus subject to personal jurisdiction in this Court. *See, e.g.*, *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021).

### IV.    FACTUAL ALLEGATIONS

**A.    CEMA protects Washington consumers from deceptive spam emails.**

17.    The Supreme Court of Washington has made clear: "[A]ll Internet users … bear the cost of deceptive spam." *State v. Heckel*, 143 Wn. 2d 824, 835 (2001) (en banc).

18.    In 1998, the Legislature found that the "volume of commercial electronic mail" was "growing," generating an "increasing number of consumer complaints." Laws of 1998, ch. 149, § 1.

CLASS ACTION COMPLAINT – 3

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

19.    While it's been nearly three decades since CEMA's enactment, the problems caused by unsolicited commercial email, *i.e.* spam email, have grown exponentially.

20.    The problems, however, are not limited to email content. Subject lines of emails are framed to attract consumers' attention away from the spam barrage to a message that entices consumers to click and, ultimately, *purchase*.

21.    In 2003, the United States Congress found that "[m]any senders of unsolicited commercial electronic mail purposefully include misleading information in the messages' subject lines in order to induce the recipients to view the messages." 15 U.S.C. § 7701(a)(8).

22.    In 2012, one study estimated that Americans bear "costs of almost $20 billion annually" due to unsolicited commercial email. Justin M. Rao & David H. Reiley, *The Economics of Spam*, 26 J. of Econ. Perspectives 87, 88 (2012).

23.    Even when bulk commercial email marketers are operating under color of consumer consent, the reality is that "[m]ost privacy consent"—especially under the "notice-and-choice" approach predominant in the United States—"is a fiction." Daniel J. Solove, *Murky Consent: An Approach to the Fictions of Consent in Privacy Law*, 104 Boston Univ. L. Rev. 593, 596 (2024).

24.    Consumers therefore routinely "consent" to receive flurries of commercial emails which they did not meaningfully request and in which they have no genuine interest.

25.    This includes emails sent to consumers from businesses with which they have no prior relationship—by virtue of commercial data brokers and commercial data sharing agreements.

26.    Simply conducting the routine affairs of daily life often exposes consumers to unanticipated and unwanted volumes of commercial email. "Nowadays, you need an email address for everything from opening a bank account to getting your dog's nails trimmed, and … [o]nce you hand over your email address, companies often use it as an all-access pass to your inbox:

CLASS ACTION COMPLAINT – 4

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

Think of shopping websites that send account updates, deals, 'we miss you' messages, and holiday promotions throughout the year. It's too much." Kaitlyn Wells, *Email Unsubscribe Services Don't Really Work*, N.Y. Times Wirecutter (Aug. 19, 2024), https://perma.cc/U8S6-R8RU/.

27.    The Legislature presciently intended CEMA to "provide some immediate relief" for these problems by prohibiting among other things commercial emails that "contain untrue or misleading information in the subject line." Laws of 1998, ch. 149, § 1.

28.    CEMA thereby protects Washington consumers against the "harms resulting from deceptive commercial e-mails," which "resemble the type of harms remedied by nuisance or fraud actions." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019).

29.    CEMA's "truthfulness requirements" increase the costs of sending deceptive commercial emails and thereby reduce their volume. *Heckel*, 143 Wn. 2d at 836.

30.    CEMA's "truthfulness requirements" thereby advance the statute's aim of protecting consumers "from the problems associated with commercial bulk e-mail" while facilitating commerce "by eliminating fraud and deception." *Id.*

31.    CEMA "mean[s] exactly what it says": in "broad" but "patently clear" language, CEMA unambiguously prohibits "sending Washington residents commercial e-mails that contain *any* false or misleading information in the subject lines of such e-mails." *Certification from U.S. Dist. Ct. for W. Dist. of Wash. in Brown v. Old Navy, LLC*, 567 P.3d 38, 44, 46–47 (Wash. 2025).

32.    CEMA's protections do not depend on whether an email was (really or fictively) solicited by consumers, nor on whether consumers relied on any false or misleading statement contained in its subject line. *See Harbers*, 415 F. Supp. 3d at 1011.

33.    The statute's only concern is to suppress false or misleading information in the

CLASS ACTION COMPLAINT – 5

subject line of commercial emails. *See Brown*, 567 P.3d at 44–45.

**B.    The subject lines of Harbor Freight's marketing emails make false time scarcity claims.**

34.    One common way online marketers "manipulate consumer choice by inducing false beliefs" is to create a false sense of urgency or to falsely claim that consumers' time to act is scarce. Fed. Trade Comm'n, *Bringing Dark Patterns to Light* 4 (2022), https://perma.cc/847M-EY69/; *see also* U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 26 (2022), https://perma.cc/V848-7TVV/.

35.    The FTC has identified the "False Limited Time Message" as one example of false time scarcity claims, in which the marketer creates "pressure to buy immediately by saying the offer is good only for a limited time or that the deal ends soon—but without a deadline or with a meaningless deadline that just resets when reached." *Bringing Dark Patterns to Light*, *supra* para. 30, at 22.

36.    "False or misleading scarcity claims can change the behavior of consumers." *Online Choice Architecture*, *supra* para. 30, at 27.

37.    Representations about the timing and duration of sales, discounts, and other special offers are fundamentally representations about prices, and such representations matter to ordinary consumers. *See, e.g.*, Huiliang Zhao *et al.*, *Impact of Pricing and Product Information on Consumer Buying Behavior with Customer Satisfaction in a Mediating Role*, 12 Frontiers in Psychology 720151 (2021), *available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC8710754/pdf/fpsyg-12-720151.pdf/.

38.    False scarcity claims are psychologically effective. As "considerable evidence" suggests, "consumers react to scarcity and divert their attention to information where they might miss opportunities." *Online Choice Architecture*, *supra* para. 30, at 26.

CLASS ACTION COMPLAINT – 6

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

39. Invoking this time pressure achieves a seller's aim to narrow the field of competitive products and deals, by "induc[ing] consumers to rely on heuristics (mental shortcuts), like limiting focus to a restricted set of attributes or deciding based on habit." *Id.*

40. Under time pressure, "consumers might take up an offer to minimize the uncertainty of passing it up." *Id.*

41. False time scarcity claims thus *harm consumers* by manipulatively distorting their decision-making to *their detriment—and the seller's benefit*.

42. Indeed, one 2019 study found that "customers who took timed deals rather than waiting to see wider options ended up worse off than those who waited." *Id.* at 27.

43. False time scarcity claims also harm market competition. Consumers learn to ignore scarcity claims, "meaning that when a product [or offer] is truly scarce, the seller will not be able to credibly communicate this information." *Id.*

44. These false time scarcity claims are a staple of the defendant's marketing scheme to compel consumers to purchase its products.

45. Harbor Freight sells tools, hardware, equipment, construction materials, handling supplies, and related accessories. The company's products are available at its brick and mortar stores (including multiple stores in Washington), and also through its website, www.harborfreight.com.

46. To advertise its products and encourage purchases, Harbor Freight routinely sends spam emails to consumers. These emails are part of a calculated marketing strategy that Defendant orchestrates in advance to maximize sales by distorting factual information about the duration and availability of its promotions.

47. **Urgent Spam Emails.** Unfortunately for those recipients, Harbor Freight titles its

CLASS ACTION COMPLAINT – 7

emails with urgent subject headings that do not reflect the true availability of the advertised deal. This strategy is demonstrated in the examples discussed below.

48.    Harbor Freight has tailored its approach to fit a number of offers, including promotion extensions. In these examples, Harbor Freight sends consumers marketing emails to advertise an offer, promotion, or sale. Then, it uses the subject lines of follow-up emails to present the promotional pricing as a scarce or time-limited opportunity. This strategy commands consumers' attention and pressures them to purchase from Harbor Freight's website. Finally, once the originally advertised "deadline" has passed, Harbor Freight knowingly extends the promotion to a new end date.

49.    This misleading marketing strategy allows Harbor Freight to maximize sales during both the initial promotion, as well as the subsequent extension. While Harbor Freight may present these extensions as though they are a favor or unexpected blessing to consumers, they are anything but. By deploying false time pressure with surprise extensions—which are only disclosed once the original promotion has ended—Harbor Freight compels consumers to purchase quickly while withholding terms that consumers need so they can make informed buying decisions.

50.    First, Harbor Freight sends consumers marketing emails advertising a new promotion. For instance, on August 19, 2022, it transmitted an email with the subject line: "HUGE PARKING LOT SALE! 3 Days Only[.]" The body of the email invited recipients to take a variety of different discounts off various products, included a Liquidation Sale banner, and also advertised no interest on certain payments made on credit. As an example of a tool advertised, the body of the email advertised $20.00 off a Portland brand corded electric power washer, for a total discounted price of $79.99 ("was $99.99" with a red strikethrough).

51.    For the next step in its scheme, Harbor Freight uses the subject lines of its follow-

CLASS ACTION COMPLAINT – 8

up emails to assert false time pressure on recipients. Such headlines urge consumers to purchase from Defendant's website or in-person stores by warning them that the offer is coming to an end.

52.    Regarding the parking lot sale, Harbor Freight followed up on its August 19, 2022 email by pelting consumers' inboxes with an urgent warning. Again on August 19, 2022, it transmitted an email with the subject heading: "HUGE PARKING LOT SALE Going on Now Through Sunday, 8/21[.]"

53.    On August 20, 2022, Harbor Freight sent another commercial email with the subject heading: "Only 2 Days Left – HUGE PARKING LOT SALE Ends Sunday[.]"

54.    On August 21, 2022, Harbor Freight sent another commercial email with the subject heading: "FINAL DAY – HUGE PARKING LOT SALE Ends Today[.]"

55.    All of these emails included an ad for the Portland brand power washer mentioned above, priced at the discounted price of $79.99.

56.    All of these emails contained false or misleading statements in their subject lines.

57.    Despite these unambiguous deadlines concerning the end of the parking lot sale, the promotion did not conclude on August 21, 2022, as advertised in the subject lines that Defendant sent consumers on those dates. Instead of providing consumers with accurate terms, Harbor Freight chose to tread a deceptive path, keeping email recipients in the dark regarding the sale's end date.

58.    In the final stage of its scheme, Harbor Freight extends the life of the promotion, proving the falsity of the deadline it first advertised. For this parking lot sale, Harbor Freight revealed that the promotion would not conclude on August 21, 2022, as originally advertised.

59.    An email transmitted on August 25, 2022, was titled, "HUGE PARKING LOT SALE EXTENDED: Huge Selection, Huge Savings" and confirmed that the promotion would

CLASS ACTION COMPLAINT – 9

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

continue beyond the August 21 end date that Harbor Freight communicated to consumers in its prior subject lines.

60.    The August 25, 2022 email included in the body of the email the identical discount on the Portland corded electric pressure washer, advertising it for sale at $79.99 with a $20.00 off discount. The August 25, 2022 email included identical discounts for many other products that reflected the same discounts offered in the prior emails in August of 2022, including for moving blankets, floor jacks, and an air compressor.

61.    The August 25, 2022 email confirms the misleading nature of Harbor Freight's August 19, 20, and 21, 2022, subject headings. The parking lot sale offers didn't end on August 21, 2022. Instead, Harbor Freight continued to offer the promotion a few days later. The false deadline for the parking lot sale to end on August 21 is simply one example and one element of Harbor Freight's cohesive marketing strategy meant to induce consumers to purchase its merchandise by disseminating false information in the subject headings of its commercial emails.

62.    The idea is to gin up urgency where there is none to persuade consumers that they must buy quickly to obtain the benefit of a certain promotion that the company says is ending imminently—when the company knows it is not.

63.    Harbor Freight continued its marketing campaigns about parking lot sales with the same deceptive strategy.

64.    This is an established pattern for Harbor Freight. It regularly transmits subject lines warning consumers that a "parking lot sale" is going to end on a certain day. Shortly thereafter, Harbor Freight proves those subject lines are false by sending additional marketing emails which advertise the same products in an "extended parking lot sale" for identical or improved prices. The following subject lines demonstrate Harbor Freight's consistent strategy:

CLASS ACTION COMPLAINT – 10

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

a. October 15, 2022: "Only 2 Days Left – HUGE PARKING LOT SALE Ends Sunday[.]"

b. October 16, 2022: "FINAL DAY – HUGE PARKING LOT SALE Ends Today[.]"

c. October 20, 2022: "EXTENDED PARKING LOT SALE! Huge Deals for 3 More Days – Don't Miss!"

d. October 21, 2022: "HUGE PARKING LOT SALE EXTENDED"

e. March 10, 2023: "HUGE PARKING LOT SALE Going on Now Through Sunday, 3/12[.]"

f. March 11, 2023: "Only 2 Days Left – HUGE PARKING LOT SALE Ends Sunday[.]"

g. March 12, 2023: "FINAL DAY – HUGE PARKING LOT SALE Ends Today[.]"

h. March 17, 2023: "Parking Lot Sale EXTENDED - Going on Now! PLUS, get 30% Off All Items $10 and under."

i. March 18, 2023: "Don't Miss Out - HUGE Parking Lot Sale Extended thru Sunday!"

j. June 2, 2023: "HUGE PARKING LOT SALE! Now Thru 6/4 – Don't Miss These Incredible Savings!"

k. June 3, 2023: "Only 2 Days Left – HUGE PARKING LOT SALE Ends Tomorrow!"

l. June 4, 2023: "FINAL DAY – Last Chance for HUGE PARKING LOT SALE SAVINGS[.]"

CLASS ACTION COMPLAINT – 11

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

m. June 8, 2023: "HUGE SAVINGS Inside the Store and Online at the EXTENDED HUGE PARKING LOT SALE! Thru 6/11[.]"

n. June 9, 2023: "Extra Savings Alert: PARKING LOT SALE EXTENDED!"

o. August 19, 2023: "2 DAYS LEFT! HUGE PARKING LOT SALE Ends Sunday, 8/20[.]"

p. August 20, 2023: "FINAL DAY – HUGE PARKING LOT SALE Ends Today[.]"

q. August 24, 2023: "HUGE PARKING LOT SALE EXTENDED!"

r. October 14, 2023: "2 DAYS LEFT! HUGE PARKING LOT SALE Ends Sunday, 10/15[.]"

s. October 15, 2023: "FINAL DAY – HUGE PARKING LOT SALE Ends Today[.]"

t. October 19, 2023: "IT'S BACK! 👀 3 DAYS ONLY! Huge Parking Lot Sale Extended, PLUS 30% Off Items $10 and Under!"

u. March 9, 2024: "Only 2 Days Left – HUGE PARKING LOT SALE Ends Sunday[.]"

v. March 10, 2024: "FINAL DAY – HUGE PARKING LOT SALE Ends Today[.]"

w. March 14, 2024: "Hundreds of Dollars in Coupon Deals at Our EXTENDED HUGE PARKING LOT SALE!"

x. March 15, 2024: "Our HUGE Parking Lot Sale is EXTENDED! 3 More Days of HUGE DEALS!"

y. August 17, 2024: "2 DAYS LEFT – HUGE PARKING LOT SALE ENDS

CLASS ACTION COMPLAINT – 12

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

TOMORROW, 8/18[.]"

z.  August 18, 2024: "FINAL DAY – OUR HUGE PARKING LOT SALE ENDS TODAY!"

aa. August 22, 2024: "HUGE PARKING LOT SALE EXTENDED!"

bb. October 12, 2024: "2 DAYS LEFT! PARKING LOT SALE Ends Sunday, 10/13[.]"

cc. October 13, 2024: "FINAL DAY – PARKING LOT SALE Ends Today[.]"

dd. October 17, 2024: "BACK AGAIN! 3 MORE DAYS of Our PARKING LOT SALE Inside the Store & Online!"

ee. March 7, 2025: "PARKING LOT SALE Going on Now thru Sunday, 3/9[.]"

ff.  March 8, 2025: "Only 2 Days Left – PARKING LOT SALE Ends Sunday[.]"

gg. March 9, 2025: "FINAL DAY – PARKING LOT SALE Ends Today[.]"

hh. March 14, 2025: "PARKING LOT SALE EXTENDED!"

ii.  August 16, 2025: "2 DAYS LEFT – PARKING LOT SALE ENDS TOMORROW, 8/17[.]"

jj.  August 17, 2025: "FINAL DAY – OUR PARKING LOT SALE ENDS TODAY!"

kk. August 21, 2025: "Get Ready To Shop! 3 More Days of Parking Lot Sale Deals!"

ll.  October 11, 2025: "2 DAYS LEFT – PARKING LOT SALE ENDS TOMORROW, 10/12[.]"

mm.        October 12, 2025: "FINAL DAY – OUR PARKING LOT SALE

CLASS ACTION COMPLAINT – 13

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

ENDS TODAY!"

nn. October 18, 2025: "Only 2 Days Left - HUGE EXTENDED PARKING LOT SALE Ends Sunday, 10/19[.]"

oo. January 18, 2026: "Only 2 Days Left to Shop Our Parking Lot Sale!"

pp. January 19, 2026: "LAST CALL! Don't Miss Unbeatable Deals at Our Parking Lot Sale!"

qq. January 22, 2026: "Extra Days, Extra Savings! PARKING LOT SALE EXTENDED!"

65. Of the emails listed in the previous paragraph, the subject lines of the following were false or misleading: October 15 and 16, 2022; March 10, 11, and 12, 2023; June 2, 3, and 4, 2023; August 19 and 20, 2023; October 14 and 15, 2023; March 9 and 10, 2024; August 17 and 18, 2024; March 7, 8, and 9, 2025; August 16 and 17, 2025; October 11 and 12, 2025; and January 18 and 19, 2026.

66. These subject lines all informed consumers that promotional pricing was available for a certain duration, or until a specific day—only for subsequent emails to revive that same offer a few days later. This is part of a cohesive marketing strategy employing deceptive patterns to create fake urgency around an invented deadline. These subject lines falsely present the advertised pricing as time-limited opportunities confined to a single day or single weekend. In reality, and as confirmed by the subsequent emails, the same pricing was offered again shortly thereafter.

67. As the above examples demonstrate, Harbor Freight employs this strategy every few months for its parking lot sales.

68. Harbor Freight uses the same scheme when advertising its products during Black Friday and Cyber Monday.

CLASS ACTION COMPLAINT – 14

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

69.     For example, on April 15, 2023, Harbor Freight transmitted a commercial email to consumers with the subject heading: "Only 2 Days Left – HUGE SALE – Spring Black Friday Sale Ends Tomorrow[.]"

70.     And on April 16, 2023, Harbor Freight transmitted another commercial email confirming what it had said on April 15: "FINAL DAY – Last Chance for HUGE Spring Black Friday Savings[.]"

71.     But it was not the final day to obtain this promotion.

72.     Only a few days later, Harbor Freight transmitted another commercial email with the subject heading: "HUGE SPRING BLACK FRIDAY SALE is Back! Hurry, Ends 4/23[.]"

73.     The subject lines of the April 15 and 16, 2023 commercial emails were false and misleading. The promotion was not ending on April 16, 2023.

74.     Harbor Freight employed this same deceptive strategy for other Black Fridays and Cyber Mondays:

    a.  November 27, 2023: "CYBER MONDAY – BLACK FRIDAY SALE Ends Today!"

    b.  November 28, 2023: "BLACK FRIDAY DEALS ARE BACK – Shop the Best Deals of the Year!"

    c.  November 30, 2023: "EXTENDED BLACK FRIDAY SALE – Now Thru Sunday, Dec. 3!"

    d.  April 12, 2024: "SPRING BLACK FRIDAY DEALS ARE LIVE! Now Thru 4/15 – Don't Miss These Incredible Savings!"

    e.  April 13, 2024: "Spring Black Friday - HUGE SALE - 3 Days Left[.]"

    f.  April 14, 2024: "Only 2 Days Left – Spring Black Friday Sale Ends

CLASS ACTION COMPLAINT – 15

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

Monday[.]"

g. April 15, 2024: "FINAL DAY – Last Chance for HUGE Spring Black Friday Savings[.]"

h. April 16, 2024: "SIX MORE DAYS! THE SPRING BLACK FRIDAY SALE IS BACK!"

i. April 18, 2024: "YOU'RE IN LUCK! Extended Spring Black Friday Deals – Now thru 4/21!"

j. December 1, 2024: "BLACK FRIDAY DEALS INSIDE! Only 2 Days Left – Shop In-Store & Online[.]"

k. December 2, 2024: "CYBER MONDAY – BLACK FRIDAY SALE Ends Today!"

l. December 3, 2024: "BLACK FRIDAY DEALS ARE BACK!"

m. December 1, 2025: "CYBER MONDAY – BLACK FRIDAY SALE Ends Today!"

n. December 2, 2025: "OUR BLACK FRIDAY DEALS ARE BACK!"

75.    Of the emails listed in the previous paragraph, the subject lines of the following were false or misleading: November 27, 2023; April 12, 13, 14, and 15, 2024; December 1 and 2, 2024; and December 1, 2025.

76.    These subject lines all informed consumers that promotional pricing was available for a certain duration of a respective day—only for subsequent emails to revive that same offer a few days later. This is part of a cohesive marketing strategy employing deceptive patterns to create fake urgency around an invented deadline. These subject lines falsely present the advertised pricing as time-limited opportunities confined to a single day or single weekend. In reality, and as

CLASS ACTION COMPLAINT – 16

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

confirmed by the subsequent emails, the same pricing was offered again shortly thereafter.

77.    By stuffing consumer inboxes with such misinformation, Harbor Freight ensures that email recipients lack the accurate details needed to make educated buying decisions.

78.    These subject lines are simply examples of a consistent and frequent pattern of misrepresentation that Harbor Freight deploys against consumers.

79.    As these examples demonstrate, Harbor Freight is engaged in a scheme where it pressures consumers to purchase products from its website using subject lines which falsely represent the availability of its offers.

**C.    Harbor Freight knows when it sends emails to Washington residents.**

80.    A sophisticated commercial enterprise, like Harbor Freight, which is engaged in persistent marketing through mass email campaigns across the United States, has several ways of knowing where the recipients of its marketing emails are located. The means it employs are peculiarly within its knowledge.

81.    First, the sheer volume of email marketing that Harbor Freight engages in put it on notice that Washington residents would receive its emails.

82.    Second, Harbor Freight may obtain location information tied to email addresses when consumers make purchases from Harbor Freight through digital platforms, or otherwise self-report such information to Harbor Freight.

83.    Third, Harbor Freight may obtain location information tied to email addresses by tracking the IP addresses of devices used to open Harbor Freight emails, which in turn can be correlated to physical location (as illustrated, for example, by the website https://whatismyipaddress.com/).

84.    Fourth, Harbor Freight may obtain location information tied to email addresses

CLASS ACTION COMPLAINT – 17

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

through the use of sophisticated marketing and analytics platforms. Specifically, to manage its email marketing campaigns, Harbor Freight appears to use both Oracle's Responsys Campaign Management to manage its email marketing campaigns and Google Analytics for additional tracking. These platforms should allow Harbor Freight to access a list of every email address that was sent any particular marketing email. It should also allow Harbor Freight to determine who viewed the emails and who clicked on any links within them.

85.    Fourth, Harbor Freight may obtain location information tied to email addresses by purchasing consumer data from commercial data brokers such as Acxiom, Oracle, and Equifax, which sell access to databases linking email addresses to physical locations, among other identifiers.

86.    Fifth, Harbor Freight may obtain location information tied to email addresses by using "identity resolution" services offered by companies such as LiveRamp, which can connect consumers' email addresses to their physical locations, among other identifiers.

87.    Sixth, Harbor Freight may obtain information that the recipients of its marketing emails are Washington residents because that information is available, upon request, from the registrant of the Internet domain names contained in the recipients' email addresses. *See* RCW 19.190.020(2).

88.    It is thus highly probable that a seller of Harbor Freight's size and sophistication employs not just one but several means of tying consumers' email addresses to their physical locations, at least at the state level.

**D.    Harbor Freight violated Plaintiffs' right under CEMA to be free from deceptive commercial emails.**

89.    Harbor Freight has spammed Plaintiffs with commercial emails whose subject lines contain false or misleading statements in violation of his right to be free from such annoyance and

CLASS ACTION COMPLAINT – 18

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

harassment under CEMA.

90.    For example, Plaintiffs received at least the following emails from Harbor Freight that contained false or misleading statements in the subject line:

    a.   Plaintiff Alexander Bonetto:

        i.   October 15, 2022: "Only 2 Days Left – HUGE PARKING LOT SALE Ends Sunday[.]"

        ii.   March 11, 2023: "Only 2 Days Left – HUGE PARKING LOT SALE Ends Sunday[.]"

        iii.   June 3, 2023: "Only 2 Days Left – HUGE PARKING LOT SALE Ends Tomorrow!"

        iv.   October 14, 2023: "2 DAYS LEFT! HUGE PARKING LOT SALE Ends Sunday, 10/15[.]"

        v.   October 15, 2023: "FINAL DAY – HUGE PARKING LOT SALE Ends Today[.]"

        vi.   April 14, 2024: "Only 2 Days Left – Spring Black Friday Sale Ends Monday[.]"

        vii.   August 17, 2024: "2 DAYS LEFT – HUGE PARKING LOT SALE ENDS TOMORROW, 8/18[.]"

        viii.   October 12, 2024: "2 DAYS LEFT! PARKING LOT SALE Ends Sunday, 10/13[.]"

        ix.   March 9, 2025: "FINAL DAY – PARKING LOT SALE Ends Today[.]"

    b.   Plaintiff Joshua Gabrielson:

CLASS ACTION COMPLAINT – 19

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

          i.   October 11, 2025: "2 DAYS LEFT – PARKING LOT SALE ENDS TOMORROW, 10/12[.]"

          ii.   December 1, 2025: "CYBER MONDAY – BLACK FRIDAY SALE Ends Today!"

   c.   Plaintiff Amber Myking:

          i.   March 11, 2023: "Only 2 Days Left – HUGE PARKING LOT SALE Ends Sunday[.]"

          ii.   March 12, 2023: "FINAL DAY – HUGE PARKING LOT SALE Ends Today[.]"

          iii.   June 3, 2023: "Only 2 Days Left – HUGE PARKING LOT SALE Ends Tomorrow!"

          iv.   June 4, 2023: "FINAL DAY – Last Chance for HUGE PARKING LOT SALE SAVINGS[.]"

          v.   August 20, 2023: "FINAL DAY – HUGE PARKING LOT SALE Ends Today[.]"

          vi.   March 9, 2024: "Only 2 Days Left – HUGE PARKING LOT SALE Ends Sunday[.]"

          vii.   March 10, 2024: "FINAL DAY – HUGE PARKING LOT SALE Ends Today[.]"

          viii.   April 13, 2024: "Spring Black Friday - HUGE SALE - 3 Days Left[.]"

          ix.   October 12, 2024: "2 DAYS LEFT! PARKING LOT SALE Ends Sunday, 10/13[.]"

CLASS ACTION COMPLAINT – 20

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

x. October 13, 2024: "FINAL DAY – PARKING LOT SALE Ends Today[.]"

d. Plaintiff Samuel Wineinger:

i. January 18, 2026: "Only 2 Days Left to Shop Our Parking Lot Sale!"

ii. January 19, 2026: "LAST CALL! Don't Miss Unbeatable Deals at Our Parking Lot Sale!"

91. The subject lines of these emails are false or misleading in violation of CEMA.

92. The subject line contained false statements of fact as to the "duration or availability of a promotion." *Brown*, 567 P.3d at 47.

## V.    CLASS ALLEGATIONS

93. Plaintiffs bring this action under Civil Rule 23 on behalf of the following putative class ("Class"):

> All Washington residents who, during the Class Period, received a commercial email sent by the Defendants, on behalf of the Defendants, or with the Defendants' assistance, that contained messaging in the email subject line which misrepresented the facts of a sale, deal or promotion.

94. Excluded from this definition of the Class are Defendants' officers, directors, and employees; Defendants' parents, subsidiaries, affiliates, and any entity in which Defendants have a controlling interest; undersigned counsel for Plaintiffs; and all judges and court staff to whom this action may be assigned, as well as their immediate family members.

95. The Class Period extends from the date four years before this Class Action Complaint is filed to the date a class certification order is entered in this action.

96. Plaintiffs reserve the right to amend the Class definition as discovery reveals additional emails containing false or misleading information in the subject line that Defendants

CLASS ACTION COMPLAINT – 21

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

sent or caused to be sent during the Class Period to email addresses held by Washington residents.

97.     The Class is so numerous that joinder of all members is impracticable because the Class is estimated to minimally contain thousands of members.

98.     There are questions of law or fact common to the class, including without limitation whether Defendants sent commercial emails containing false or misleading information in the subject line; whether Defendant sent such emails to email addresses they knew or had to reason to know were held by Washington residents; whether Defendants' conduct violated CEMA; whether Defendants' violation of CEMA constituted a *per se* violation of the Consumer Protection Act, RCW 19.86.020 (CPA); and whether Defendants should be enjoined from such conduct.

99.     Plaintiffs' claims are typical of the Class's because, among other reasons, Plaintiffs and Class members share the same statutory rights under CEMA and the CPA, which Defendants violated in the same way by the uniform false or misleading marketing messages they sent to all putative members.

100.     Plaintiffs will fairly and adequately protect the Class's interests because, among other reasons, Plaintiffs share the Class's interest in avoiding unlawful false or misleading marketing; have no interest adverse to the Class; and have retained competent counsel extensively experienced in consumer protection and class action litigation.

101.     Defendants have acted on grounds generally applicable to the Class, in that, among other ways, they engaged in the uniform conduct of sending uniform commercial emails to Plaintiffs and the Class, which violate CEMA and the CPA in the same way, and from which they may be enjoined as to Plaintiffs and all Class members, thereby making appropriate final injunctive relief with respect to the Class as a whole.

102.     The questions of law or fact common to the members of the Class predominate over

CLASS ACTION COMPLAINT – 22

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

any questions affecting only individual members, in that, among other ways, Defendants have violated their rights under the same laws by the same conduct, and the only matters for individual determination are the number of false or misleading emails received by each Class member and that Class member's resulting damages.

103.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other reasons, the claims at issue may be too small to justify individual litigation and management of this action as a class presents no special difficulties.

## VI.    CLAIMS TO RELIEF

### First Claim to Relief

### Violation of the Commercial Electronic Mail Act, RCW 19.190.020

104.    Plaintiffs incorporate and reallege paragraphs 1–92 above.

105.    CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

106.    Defendants are "persons" within the meaning of CEMA. RCW 19.190.010(11).

107.    Defendants initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

108.    Defendants initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that

CLASS ACTION COMPLAINT – 23

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

Defendants knew, or had reason to know, were held by Washington residents, including because Defendants knew that Plaintiffs and putative members were Washington residents through "information is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address". RCW 19.190.020(b)(2).

109. Defendants initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

110. For Defendants' violation of CEMA, Plaintiffs are entitled to all available relief, including an injunction against further violations.

## Second Claim to Relief

### Violation of the Consumer Protection Act, RCW 19.86.020

111. Plaintiffs incorporate and reallege paragraphs 1–92 above.

112. The CPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020.

113. A violation of CEMA is a *per se* violation of the CPA. RCW 19.190.030.

114. A violation of CEMA establishes all the elements necessary to bring a private action under the CPA. *Wright v. Lyft*, 189 Wn. 2d 718 (2017).

115. CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

CLASS ACTION COMPLAINT – 24

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

116. Defendants are "persons" within the meaning of CEMA. RCW 19.190.010(11).

117. Defendants initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

118. Defendants initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendants knew, or had reason to know, were held by Washington residents.

119. Defendants initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

120. For Defendants' violation of the CPA, Plaintiffs and putative members are entitled to an injunction against further violations; the greater of Plaintiffs' actual damages or liquidated damages of $500 per violation, trebled; and costs of the suit, including a reasonable attorney's fee.

## VII.    JURY DEMAND

121. Plaintiffs will demand a jury trial by separate document in accordance with Local Civil Rule 38(b).

## VIII.    PRAYER FOR RELIEF

Plaintiffs ask that the Court:

A.    Certify the proposed Class, appoint Plaintiffs as Class representatives, and appoint undersigned counsel as Class counsel;

B.    Enter a judgment in Plaintiffs' and the Class's favor permanently enjoining Defendants from the unlawful conduct alleged;

CLASS ACTION COMPLAINT – 25

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

C.      Enter a judgment in Plaintiffs' and the Class's favor awarding actual or liquidated damages, trebled, according to proof;

D.      Award Plaintiffs costs of suit, including reasonable attorneys' fees; and

E.      Order such further relief the Court finds appropriate.

*[Counsel signatures to follow on next page.]*

CLASS ACTION COMPLAINT – 26

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

Date:  June 9, 2026

Respectfully submitted,

/s/ Samuel J. Strauss

Samuel J. Strauss, WSBA No. #46971
Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com

Lynn A. Toops*
Natalie A. Lyons*
Ian R. Bensberg*
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
ibensberg@cohenmalad.com

Gerard J. Stranch, IV*
Michael C. Tackeff*
Andrew K. Murray*
**STRANCH, JENNINGS &
GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Telephone: (615) 254-8801
gstranch@stranchlaw.com
mtackeff@stranchlaw.com
amurray@stranchlaw.com

*Counsel for Plaintiff and the Putative Class*

**\* Applications for admission
*pro hac vice* forthcoming**

CLASS ACTION COMPLAINT – 27